Terry and Ladona DUNN, Appellant,

v.

## SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.

No. 12–97–00184–CV.

Court of Appeals of Texas, Tyler.

April 29, 1999.

Rehearing Overruled May 24, 1999.

---

Bill Clark, Mike Hatchell, Tyler, for appellants.

Brent Howard, Robert G. Hogue, Chris Bunt, Tyler, for appellees.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J. and WORTHEN, J.

## OPINION ON MOTION FOR REHEARING

HADDEN, Justice.

Appellant Ladona Dunn ("Dunn") filed a motion for rehearing in this matter.[1] Dunn urged this Court to rehear its decision to deny attorney's fees and prejudgment interest. With regard to Dunn's motion, the court grants it in part and denies in part. This Court's previous opinion of December 31, 1998, is withdrawn, and the following opinion issued.

---

1. Appellee Southern Farm Bureau Casualty Insurance Company ("Farm Bureau") also presented a motion for rehearing. However, Farm Bureau's motion was not timely, was marked "received" but not "filed" by the clerk, and is overruled.

In a nonjury trial, Appellant Dunn recovered a judgment for personal injury damages under the uninsured/underinsured motorist coverage provision of a liability insurance policy. However, in one point of error, Dunn appeals the trial court's refusal to award her 18 percent additional damages and reasonable attorney fees against her insurer for alleged violations of the prompt payment requirements of Texas Insurance Code, Article 21.55. Appellee and Cross–Appellant, Southern Farm Bureau Casualty Insurance Company ("Farm Bureau"), in three cross-points, alleges that the trial court erred in awarding damages to Dunn because there were no findings that the underinsured motorist was negligent and because the evidence was not legally or factually sufficient to support its findings. We will reverse and render in part, reverse and remand in part, and affirm the balance of the judgment.

Dunn was insured under a standard form automobile liability policy issued by Farm Bureau which contained uninsured/underinsured motorist ("UM") coverage. She was injured when her vehicle was struck from the rear by an underinsured motorist. In her suit Dunn sought to recover not only UM benefits, but additional damages and attorney fees as the result of Farm Bureau's alleged violation of the prompt payment requirements of article 21.55 of the Texas Insurance Code. After a bench trial, the trial court rendered judgment in favor of Dunn in the amount of $220,000.00 for personal injury damages and $118,251.22 for prejudgment interest. However, the trial court did not award Dunn the requested 18 percent additional damages and attorney fees provided for in article 21.55, section 6. In her sole issue presented, Dunn asserts that the trial court erred by refusing to award the 18 percent penalty, attorney's fees, and prejudgment interest.

■ At the heart of this case is the interpretation and application of the prompt payment provisions of article 21.55.

The interpretation of statutes is a quest for legislative intent. *State v. Jackson*, 376 S.W.2d 341, 346 (Tex.1964). Legislative intent is found principally in the "words" of a statute. *St. Luke's Episcopal Hospital v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). A statute's words must be given their plain, grammatical meaning. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988). The pertinent provisions of article 21.55 are as follows:

. . .

## Notice of Claim

Sec. 2. (a) . . . an insurer shall, not later than the 15th day after receipt of notice of a claim . . .

(1) acknowledge receipt of the claim;

(2) commence any investigation of the claim; and

(3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. Additional requests may be made if during the investigation of the claim such additional requests are necessary.

(b) If the acknowledgment of the claim is not made in writing, the insurer shall make a record of the date, means, and content of the acknowledgment.

## Acceptance or rejection of claims

Sec. 3. (a) . . . an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.

. . .

(c) If the insurer rejects the claim, the notice required . . . must state the reasons for the rejection.

. . .

(f) . . . if an insurer delays payment of a claim following its receipt of all

items, statements, and forms reasonably requested and required, as provided under Section 2 of this article ... for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

. . .

### Damages

Sec. 6. In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor *is not in compliance with the requirements of this article,* such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

. . .

### Liberal construction

Sec. 8. This article shall be liberally construed to promote its underlying purpose which is to obtain prompt payment of claims made pursuant to policies of insurance.

Tex. Ins.Code Ann. art. 21.55, §§ 2, 3, 6, and 8 (Vernon 1997) (emphasis added).

Following the bench trial, the trial court found that Farm Bureau verbally acknowledged receipt of the claim and requested more information within fifteen days of receiving the claim. However, because the acknowledgment was verbal, Farm Bureau was required to make a record of the date, the means, and the content of the acknowledgment. The trial court found that Farm Bureau improperly documented the verbal acknowledgment by failing to record the date that it was made. Additionally, Farm Bureau's adjuster admitted at trial that he did not record the means of the acknowledgment as required by the statute. The trial court further found that Farm Bureau

had received all the requested information between December 13 and December 20, 1994, and that Farm Bureau delayed payment of the claim for more than sixty days after its receipt of the necessary information. This delay was essentially undisputed in the record and admitted by Farm Bureau's adjuster.

■ There is very little case law interpreting article 21.55. No legislative history was cited by either party in support of their respective arguments. However, the Austin Court of Appeals has held that the payment of the penalty provided for in article 21.55, section 6, is payable when the insured fails to comply with *any* of the requirements of the act. *Mid–Century Insurance Co. v. Barclay,* 880 S.W.2d 807, 811–12 (Tex.App.—Austin 1994, writ denied). We agree with this interpretation. Thus, under the plain, grammatical meaning of the words used in the statute and the undisputed facts found by the trial court, we hold that Dunn was entitled to the 18 percent statutory damages provided for in article 21.55.

Farm Bureau contends that the trial court correctly concluded that the sanctions imposed by article 21.55 should not be applied to the instant case (1) because it was in compliance with the requirements of the statute, (2) because the statute does not apply to situations where claimants are represented by counsel, and (3) because the statute was not designed to apply to UM claims.

### Was Farm Bureau in Compliance with the Statute?

■ Dunn had previously submitted a claim for personal injury protection ("PIP") benefits under the same insurance policy for her injuries arising out of the same accident. It is undisputed that Farm Bureau properly followed the requirements of article 21.55 in regard to the PIP claim. Farm Bureau asserts that article 21.55 does not require an insurer to take the same procedural steps each time an

insured asserts a claim arising out of the same accident. Farm Bureau argues, without supporting authority, that when Dunn asserted her claim under the UM coverage, it was not required to duplicate the efforts it made in handling the PIP claim in order to satisfy the requirements of article 21.55. We do not agree.

The policy in the instant case offers five separate coverages, that is, liability coverage, medical payments coverage, personal injury protection coverage, uninsured/underinsured motorist coverage, and coverage for damage to property. Each coverage has its own distinct insuring agreement, exclusions, limits of liability, and other provisions applicable to that kind of coverage. The items, statements and forms that an insurer would reasonably believe would be required from a claimant in order to investigate a claim under one type of coverage would not necessarily be the same as those required for a claim under another type of coverage. For example, a claim for damages to a covered auto would not require evidence of medical expenses. Further, a claim under medical payments coverage would only require evidence of medical expenses, whereas a claim under PIP coverage would also require evidence of loss of wages from personal injury. A significant distinction is that if a PIP claim is made, the adjuster does not need to establish who is legally responsible for the accident, but does need to establish legal responsibility when a UM claim is made, and such a claim would greatly expand the investigative efforts of the adjuster. Thus, the contract provisions relating to the PIP coverage and the UM coverage were different, the grounds for liability under the two coverages were different, the documents and other items necessary to be submitted by Dunn would not necessarily be the same, and the grounds for accepting or rejecting each claim would not necessarily be the same. If filing one claim under one type of coverage satisfies the requirement of article 21.55, then the purpose of the statute could easily be cir-

cumvented. Farm Bureau could respond to a small claim under the PIP coverage, thereby satisfying all of the requirements of article 21.55 but thereafter delay paying a claim made under one of the other coverages, such as the UM coverage in the instant case, and thus defeat the underlying purpose of the statute which is to obtain prompt payment of claims. Thus, we conclude that when Farm Bureau properly followed the requirements of article 21.55 in connection with Dunn's PIP claim, this did not satisfy the statutory requirements in connection with Dunn's UM claim.

■ Farm Bureau further argues that even if a second claim under the UM coverage would require it to follow article 21.55, it complied with the pertinent provisions of the statute. However, the record does not support this argument. Dunn's attorney informed Farm Bureau's adjuster in writing of the UM claim. The adjuster called Dunn's attorney, verbally acknowledged the claim, and requested documentation to support her claim, such as medical expenses and pain and suffering. However, the adjuster did not acknowledge receipt of the UM claim in writing, as required by the statute, nor did he make a record of the date and means of the acknowledgment. Farm Bureau's argument that it complied with the statute is without merit.

### DOES PRESENTING CLAIM THROUGH AN ATTORNEY

### PRECLUDE DUNN FROM BEING A CLAIMANT UNDER THE STATUTE?

■ The trial court made the following conclusion of law:

. . .

2. Article 21.55 of the Texas Insurance Code is intended to apply in situations where the insurance company is dealing directly with the insured claimant. Once an attorney becomes involved on behalf of the in-

sured claimant, Article 21.55 is not applicable.

. . .

Farm Bureau argues that the plain language of the statute defines "claimant" as "a person making a claim" and that since the legislature did not define the term "claimant" broadly enough to include "lawyers," article 21.55 will not apply to a case where a claimant is represented by an attorney. We do not agree.

■ There is no Texas authority which interprets article 21.55 to exclude from its protection claimants who present insurance claims through attorneys merely because the statute defines a claimant as "a person making a claim." The definitions in the statute do not facially exclude persons who are represented by attorneys and to read such an exemption into the statute would be contrary to settled law regarding attorneys acting as agents for their clients. *See Texas Employers Insurance Assoc. v. Wermske*, 162 Tex. 540, 349 S.W.2d 90, 95 (1961). It is axiomatic that what a principal does through an agent, he does himself. *Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 245 (Tex.App.—Amarillo 1994, no writ). When a principal acts through an agent, it is as if the principal acts personally. *Estate of Lucas v. Whiteley*, 550 S.W.2d 767, 769 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Additionally, section 6 of article 21.55 contemplates that claimants protected by the act may indeed be represented by counsel because it mandates the award of attorney fees to a claimant whose insurance carrier is not in compliance with the statute. TEX. INS.CODE ANN. art. 21.55, § 6 (Vernon 1997). Furthermore, the legislature concluded the statute by stating that the article must "be liberally construed to promote its underlying purpose which is to obtain prompt payment of claims." TEX. INS.CODE ANN. art. 21.55, § 8 (Vernon 1997).

Thus, the logical conclusion is that Dunn remains a "claimant" under the statute even though her claim was presented by her attorney. Moreover, the trial court's conclusion of law narrows the scope of the statute and creates a discrimination between claimants that is not justified by the statute's language or the underlying policy that prompted its passage. The impact upon insurance claimants by the practices condemned in article 21.55 is the same whether the claimant is represented by counsel or not. We conclude that being represented by an attorney did not preclude Dunn from being a "claimant" as defined by the statute.

### WAS THE STATUTE DESIGNED TO APPLY TO UM CLAIMS?

■ Farm Bureau contends that article 21.55, a relatively new statute (1991), has its roots in articles 3.62 and 3.62–1 of the Insurance Code.[2] It points out that although those statutes permitted penalties and attorney fees for failure to make prompt payment of claims, Texas cases held that their application depended on the type of insurance involved, and uninsured motorist coverage did not come within their purview. *Reliance Insurance Co. v. Falknor*, 492 S.W.2d 721, 723 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). It argues that because of the similarity between article 21.55 and its predecessors, the legislature never intended article 21.55 to apply to UM coverage.

The question of whether article 21.55 applies to UM coverage has not yet been considered by Texas courts, nor has Farm Bureau directed us to legislative history to support its interpretation. However, from our reading of article 21.55 and its predecessors, it is clear that the legislature intended to no longer limit the prompt payment provisions of the Insurance Code to specific types of insurance. In enacting article 21.55, the legislature used language

**2.** Both Article 3.62 and 3.62–1 were repealed by Acts 1991, 72nd Leg., Ch. 242 § 12.01(2) effective September 1, 1991.

making the statute applicable to "any insurer authorized to do business as an insurance company or to provide insurance in this state...." Further, article 21.55, section 5 contains a specific provision which exempts certain types of insurance from its applicability, and UM coverage is not among the excluded types of insurance. If the legislature intended that the statute would not apply to UM coverage, it could easily have included it in the exemption section.

■ Farm Bureau further asserts that the statute was designed to apply to cases in which damages are readily ascertainable such as property damage or PIP protection, and because UM coverage damages are not readily ascertainable, the penalty statute should not apply. It argues that it cannot accept or deny the claim until it determines what amount, if any, the claimant is entitled to recover. Farm Bureau further asserts that it cannot determine liability and damages in a UM claim until a jury reaches its verdict. It concludes, therefore, that under Dunn's interpretation of the statute, it could never dispute damages without being penalized by article 21.55. We do not agree. Article 21.55 does not require an insurer to pay every claim within a certain time. It simply requires steps to be taken within a specified time frame. TEX. INS.CODE ANN. art. 21.55, §§ 2, 3 (Vernon 1997). Nothing in the statute suggests that the insurance company could not dispute and deny the claim. Indeed the statute is premised on the presumption that carriers have the right to dispute claims. It merely requires that they do so promptly.

Article 21. 55 is relatively new and its provisions have not been interpreted or applied in many reported cases. However, the statute is simple and its language unambiguous. Of particular importance, an interpretation of a statute must be consistent with its underlying purpose and the policies it promotes. TEX. GOV'T CODE ANN. § 311.023(1) (Vernon 1988). This Court is

not unaware of the concerns that have been expressed by Farm Bureau as to the applicability of article 21.55 to liability coverage and UM coverage, but these concerns should be addressed to the legislature. Interpreting a statute contrary to its terms in order to effectuate an unintended result is not the role of the judiciary. The plain objective of the statute is to obtain prompt payment of claims, and we, as a court, must liberally construe the statute to promote its underlying purposes. *See* TEX. INS.CODE ANN. art. 21.55, § 8 (Vernon 1997). Thus, we hold that the requirements and sanctions provided for in article 21.55 apply to UM claims.

### WAS DUNN ENTITLED TO RECOVER ATTORNEY FEES?

Because we have determined that Farm Bureau did violate article 21.55, we must next determine whether Dunn is entitled to an award of attorney's fees. The trial court found in its conclusions of law that Farm Bureau did not violate any provisions of the article 21.55, and therefore, it did not award any attorney's fees in its judgment. Although the court did not award attorney's fees, it did find that a reasonable attorney's fee, stated as a percentage, was "one-third." The court further found that a reasonable attorney's fee for an appeal to the court of appeals was $2,500.00, that a reasonable attorney's fee for responding to an application for writ of error to the Supreme Court was $2,500.00 and that a reasonable attorney's fee if the application for the writ of error was granted by the Supreme Court was $2,500.00. Dunn argues that she is entitled to attorney's fees as found by the trial court. In its second–cross point, Farm Bureau contends that the trial court's finding of reasonable attorney's fees was erroneous because Dunn's proof did not comply with standards announced in the Texas Supreme Court's recent ruling in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945

S.W.2d 812, 817–818 (Tex.1997).[3]

■ Section 6 of article 21.55 authorizes the award of attorney's fees. If the insurer is not in compliance with the requirements of article 21.55, the insurer is also liable to pay the policy holder reasonable attorney fees. TEX. INS.CODE ANN. art. 21.55 § 6 (Vernon 1997). Recently, the Texas Supreme Court held that a plaintiff can no longer simply ask the fact finder to award a percentage of the damages as attorney fees. *Arthur Andersen & Co.,* 945 S.W.2d at 817–818. *See also Lubbock County v. Strube,* 953 S.W.2d 847, 858 (Tex.App.—Austin 1997, review denied); *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 940 (Tex.App.—Texarkana 1997, writ denied). It is undisputed that, at the time of trial, proof of a contingent fee agreement was sufficient to support an award of attorney's fees under article 21.55 of the Insurance Code. *See Mid–Century Insurance Co. v. Barclay,* 880 S.W.2d 807, 812 (Tex.App.—Austin 1994, writ denied). However, it is equally clear that *Arthur Andersen & Co.* has changed that law. Although a party's contingent fee agreement may be considered by the fact finder, that agreement alone does not provide the fact finder with a meaningful way to determine if the actual amount of attorney fees was in fact reasonable and necessary. *Arthur Andersen & Co.,* 945 S.W.2d at 819. The plaintiff must prove that the fees were both reasonably and necessarily incurred in the prosecution of the case and ask the fact finder for a specific dollar amount. *Id.* In *Arthur Andersen & Co.,* the court set forth factors that a fact finder should consider when determining the reasonableness of a fee. They are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 817–18 (quoting TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (TEX. STATE BAR R. art. X, § 9)). *See also Lubbock County,* 953 S.W.2d at 858 (applying *Arthur Andersen & Co.* opinion regarding attorney's fees to award of such fees under the Whistleblower Act).

■ This Court must apply the law as changed by our supreme court. When the applicable law changes during the pendency of an appeal, the appellate court is required to apply the new law. *Blair v. Fletcher,* 849 S.W.2d 344, 345 (Tex.1993). Decisions of the supreme court operate retroactively unless that court provides otherwise. *Bowen v. Aetna Casualty & Surety Co.,* 837 S.W.2d 99, 100 (Tex.1992). When a change in law by the supreme court renders the trial court's award of attorney's fees erroneous, the reviewing court may sever the attorney's fee claim, and reverse and remand the case only insofar as it relates to attorney's fees. *Lubbock County,* 953 S.W.2d at 858; *ASAI v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 124 (Tex.App.—El Paso 1996, no writ).

---

**3.** At the time of this trial, the supreme court had not yet issued its opinion in *Arthur Andersen & Co.* The trial court rendered judgment on March 11, 1997, and the supreme court decided *Arthur Andersen & Co.* on May 16, 1997.

■ Under *Arthur Andersen & Co.*, Dunn did not meet her burden of proof regarding an award of attorney's fees. At trial, Dunn proved that she had a one-third contingent fee contract with her attorney, and her attorney testified that a one-third contingent fee arrangement was reasonable. There was no further evidence supporting the above listed factors necessary for the awarding of attorney fees, with the possible exception of factor three. However, because neither the parties nor the trial judge in the instant case had the benefit of the supreme court's opinion in *Arthur Andersen & Co.*, we will sever the issue of attorney's fees and remand the question of those fees for a determination of reasonable and necessary attorney's fees in light of *Arthur Andersen & Co.*[4]

## FARM BUREAU'S CROSS-POINTS

In cross-point of error one, Farm Bureau alleges that the trial court erred in awarding damages because plaintiff failed to obtain necessary findings of fact and conclusions of law that the underinsured motorist was negligent. It argues that Texas courts have held that uninsured motorist coverage is designed to place the injured party in the same position as if the other motorist had been insured, citing *Greene v. Great American Insurance Co.*, 516 S.W.2d 739, 743 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.), and that a victim of an automobile accident cannot make a claim against the liability insurance company of an insured driver until the victim establishes, by judgment or agreement, that the insured driver is legally obligated to pay damages, citing *State Farm County Mutual Insurance Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex.1989); *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 (Tex.App.—Austin 1992, no writ). Thus, it asserts that Dunn cannot recover under her underinsured motorist policy until she establishes, by judgment or agreement, that the uninsured motorist, was legally

obligated to pay the damages. *Id.* Farm Bureau points out that Dunn has not obtained a finding that the underinsured motorist was at fault or that his negligence proximately caused the damages. It contends that, absent such a finding or conclusion of law, judgment should not have been rendered for Dunn.

Dunn asserts, however, that even though there were no finding of fact or conclusions of law on the negligence issue, Farm Bureau waived its right to contest the underinsured motorist liability to Dunn. Farm Bureau's attorney stated to the court at the beginning of trial that "what your Honor is going to be called upon to do and I'll state again, we don't believe liability is going to be an issue . . . ." Its attorney further stipulated that ". . . the requirements or conditions precedent to recovery under the UM insurance policy have been complied with or deemed complied with . . . ." Dunn argues that such stipulations by Farm Bureau are binding, citing Texas Rule of Civil Procedure 11.

■ The record shows that the negligence of the underinsured motorist was not a contested issue. However, it is not necessary for us to address Dunn's waiver argument because Farm Bureau's cross-point one may be overruled on other grounds asserted by Dunn. The facts introduced at trial support a deemed finding of liability. The uncontested evidence shows that Dunn was stopped at a crosswalk on Loop 323 in Tyler, waiting to pick up her children after school. There were pedestrians in the crosswalk, legally obligating her to stop. She was then struck from the rear by the underinsured motorist and knocked about ten feet by the force of the collision. The evidence does not suggest in any way that Dunn contributed to the accident or that the uninsured motorist had an excuse for his conduct. Under

**4.** We remand to the trial court the entire issue of attorney's fees, both for the trial and appeal of this case. We therefore decline to award, as urged by Appellant, the conditional attorney's fees for appeal as found by the trial court.

Texas Rule of Civil Procedure 299, when one or more elements of a cause of action have been found by the trial court, omitted unrequested elements, supported by the evidence, will be supplied by presumption in support of the judgment. TEX.R. CIV. P. 299. In the instant case, there was ample evidence to support all the elements of negligence and it appears from the record that at least one element was found by the trial court. Under the common law of Texas, a cause of action for negligence has three elements: 1) a legal duty; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998); *see Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The trial court, in its findings of fact and conclusions of law made no findings of a legal duty, nor a breach of that duty. However, it did find the third element, that is, that Dunn suffered $220,000.00 in damages as a result of the accident in question. Thus, it appears that at least one element of a cause of action for negligence was found by the court, and we therefore hold that under Texas Rule of Civil Procedure 299, the remaining elements may be presumed. Farm Bureau's cross-point one is overruled.[5]

In cross-point three, Farm Bureau asserts that the evidence is legally insufficient, or in the alternative, factually insufficient to support its findings of damages. Farm Bureau's basic contention is that Dunn suffered from the same physical problems before the accident as she did after the accident. Therefore, it asserts that her physical problems were not caused by the accident and the trial court's award of damages was erroneous. We disagree.

At the outset, we note that findings of fact are reviewable for legal and factual sufficiency of the evidence according to the same standards that are applied in reviewing evidence in support of a jury's verdict.

*ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 121 (Tex.App.—El Paso 1996, no writ); *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ). In reviewing a no evidence point, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). Any evidence of probative force supporting a finding requires the appellate court to uphold the trial court's finding. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). In the absence of such evidence, the appellate court must reverse and render judgment. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). When conducting a factual sufficiency review, the appellate court examines the trial court's finding to determine if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Although Dunn had a preexisting back injury at the time of the accident, there is ample evidence in the record supporting Dunn's claims that her injuries were caused or exacerbated by the accident with the uninsured motorist. Dunn suffered from obesity, back, arm, neck and shoulder injuries prior to the accident. However, Dr. Andrew Cole ("Cole"), Dunn's treating physician, testified that it was obvious to him that the accident caused Dunn's neck, shoulder and arm pain, and her exacerbated back injuries. Cole testified that although Dunn suffered from a protruding herniated disc of the thoracic spine and a bulging disc of the lumbar spine prior to the accident, the myelogram, MRI and CT scan conducted after the accident indicated a more complex herniation. Specifically, Dunn exhibited an extrusion of the disc with three fragments floating in the spinal canal.

5. As we have already addressed the issue of attorney's fees, we do not here address Farm Bureau's second cross point which concerns that issue.

Cole explained in detail how the accident caused Dunn's herniated disc to worsen from a protrusion to an extrusion with three fragments. As to her neck and shoulder pain, there is evidence that Dunn was free of such pain before the collision, but that afterwards she suffered from neck, shoulder and arm pain, and injuries. Cole opined that Dunn's pain in these locations stemmed from her back injuries suffered in the collision. He concluded that but for the accident Dunn would not have these problems.

Dunn's treating physician testified that her medical bills of $54,909.00 were caused from the accident. At trial, an expert economist testified, without challenge, that Dunn's future medical needs could reach $176,900.00 during her expected lifetime. The same expert testified that she incurred lost wages in the past and will incur lost earning capacity in the future between $286,000.00 and $413,000.00. Furthermore, there is evidence that prior to the accident physical therapy had almost completely resolved Dunn's previous back pain. After considering all of the evidence in the light most favorable to the court's finding, there is more than a scintilla of evidence which supports the finding on damages. Moreover, we cannot say that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Thus, we hold that the evidence is legally and factually sufficient to support the court's findings on damages. Accordingly, Farm Bureau's cross-point three is overruled.

### CONCLUSION

■ The statute provides that the insured shall be liable to pay, in addition to the amount of the claim, 18 percent per annum of the amount of such claim *as damages*. Thus, according to our holding, Dunn is allowed 18 percent of $220,000.00 per annum from the date of accrual. Damages began to accrue on the earlier of (1) 180 days after the date Farm Bureau received written notice of a claim or (2) the date suit was filed. *See* TEX. FIN.CODE ANN. § 304.104 (Vernon Supp.1998); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998). The 18 percent per annum additional damages accrued on September 9, 1993, which was 180 days after Farm Bureau received notice of Dunn's uninsured motorist claim on March 13, 1993. Thus, Dunn is entitled to receive 18 percent per annum on $220,000.00 from September 9, 1993 to March 11, 1997, the date of judgment.

■ Additionally, Dunn has prayed for pre-judgment interest on the 18 percent additional damages. She argues that the 18 percent penalty is an element of damages available under the statute, and that she is entitled to prejudgment interest on all damages. Farm Bureau contends that an award of prejudgment interest on the penalty constitutes a double recovery.

The purpose of pre-judgment interest is two-fold: (1) to compensate a claimant for lost use of the money during the lapse of time between accrual of the claim and the date of judgment, *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 584 (Tex.App.—Texarkana 1997, no writ); and (2) it advances the objective of encouraging speedy compensation to claimants. *Domangue v. Eastern Airlines, Inc.*, 722 F.2d 256, 264 (5th Cir.1984); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985), *overruled on other grounds, Johnson & Higgins of Texas, Inc.*, 962 S.W.2d at 531. Texas intermediate appellate courts disagree on the issue of whether a successful claimant under article 21.55 of the Texas Insurance Code is entitled to receive prejudgment interest on the 18 percent statutory penalty authorized by section 6 of that article. The Fort Worth court has refused to award interest on the statutory penalty. *See Marineau v. General American Life Insurance Co.*, 898 S.W.2d 397, 405–06 (Tex.App.—Fort Worth 1995, writ denied) (court did not discuss decision to refuse prejudgment in-

terest on penalty, but calculations in opinion reflect court awarded prejudgment interest on amount of the claim only, and not on the 18 percent penalty). *Accord, Teate v. Mutual Life Insurance Co.*, 965 F.Supp. 891, 895 (E.D.Tex.1997) (court declined to apply prejudgment interest to statutory penalty). The Texarkana court has reached a contrary result. In *Bekins,* that court held that the trial court properly awarded prejudgment interest on the total amount of damages, including the 18 percent penalty. *Bekins Moving & Storage Co.,* 947 S.W.2d at 584. While our supreme court has not addressed the issue of the award of prejudgment interest on a penalty imposed by article 21.55, section 6, that court has discussed the general policy that "[p]unitive damages, being inherently penal in character, should not be enlarged ·by the imposition of prejudgment interest in the absence of an express legislative intent to do so." *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 798 (Tex.1994).

In the instant case, both legitimate objectives of prejudgment interest are satisfied without awarding pre-judgment interest on the 18 percent additional damages. First, the 18 percent is ample compensation for lost use of the money, and second, the legislature makes it clear in the statute that the underlying purpose of the penalty is to obtain prompt payment of the claim. Further, absent express legislative authorization for prejudgment interest on the penalty, we adopt the reasoning of the supreme court and decline to award prejudgment interest on the 18 percent additional damages.

For the reasons stated, we reverse that portion of the trial court's judgment that failed to award Dunn the 18 percent per annum statutory penalty, and render judgment that she have and recover from Farm Bureau 18 percent per annum of $220,000.00, or $138,541.73. Further, we reverse that portion of the trial court's judgment that denied Dunn the statutorily mandated attorney's fees, and remand that issue to the trial court for the determina-tion of a reasonable attorney's fee only. In all other respects, the judgment of the trial court is affirmed. Therefore, Dunn's total monetary recovery consists of the following: personal injury damages of $220,000.00, as found by the trial court; the 18 percent penalty, $138,541.73; prejudgment interest on the personal injury damages only, $118,251.22; and reasonable attorney's fees in an amount to be determined by the trial court. Dunn is further entitled to post-judgment interest on the total amount from the date of judgment until paid at the rate 10 percent per annum compounded annually.