Lawrence F. WELLISCH, III
and Maria L. Wellisch,
Appellants,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Appellee.

No. 04–01–00247–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 23, 2002.

Rehearing Overruled Feb. 27, 2002.

---

Carmen Samaniego, Christa Samaniego, Law Offices of Christa Samaniego, San Antonio, for Appellant.

---

Barry A. McClenahan, Ruth G. Malinas, Christopher J. Deeves, Ball & Weed, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice,[1] and PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

Lawrence and Maria Wellisch seek reversal of summary judgment in favor of the United Services Automobile Association ("USAA") on the Wellisches' Texas Insurance Code article 21.55 claim, breach of duty of good faith and fair dealing claims, and mental anguish claims. We affirm.

## BACKGROUND

Judith Salinas was driving her car at about eighty-eight miles per hour when she lost control of the vehicle. The car rolled over, killing Salinas and her son and severely injuring other passengers, including fifteen-year-old Jessica Wellisch. Jessica was in a coma for five days before she died. Salinas carried insurance under two policies, for a total of at least $2.5 million. The Wellisches sued Salinas' estate, and, with USAA's permission, settled for $1 million. The Wellisches then sought to recover under their USAA uninsured/underinsured motorist ("UIM") coverage, the recovery limits of which were $300,000. On November 25, 1998, USAA denied the claim, and the Wellisches sued.

The trial court ordered separate trials on the Wellisches' contractual and extra-contractual claims. Before trial on their contractual claims, the Wellisches obtained partial summary judgment, establishing that Salinas' negligence caused the accident. A jury trial on damages followed, with a verdict favorable to the Wellisches

---

1. J. Rickhoff not participating.

in the amount of $6 million. On May 2, 2000, the trial court entered the judgment; on that same day, USAA paid the Wellisches their policy limits of $300,000. No appeal from that judgment ensued.

The Wellisches then proceeded on their extracontractual claims against USAA. The Wellisches moved for partial summary judgment on their claim for statutory damages under Insurance Code article 21.55. USAA filed various motions for partial summary judgment on all the claims asserted by the Wellisches. The trial court denied the Wellisches' motion for partial summary judgment, and granted USAA's motions. The trial court entered final judgment in USAA's favor, and the Wellisches appealed.

## INSURANCE CODE ARTICLE 21.55 PENALTIES

■ The Wellisches assert that USAA's denial of their claim on November 25, 1998 was a violation of Texas Insurance Code article 21.55's prompt payment provisions, resulting in Article 21.55, section 6 penalties. USAA argues that because May 2, 2000 was the first date on which the Wellisches became legally entitled to their UIM policy benefits and it paid the claim on that date, it is not liable for Article 21.55 penalties.

The UIM policy provides that USAA will "pay all damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person...." The policy defines uninsured motor vehicle .to mean a land motor or trailer of any type,

4. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:

a. is not enough to pay the full amount the covered person is legally entitled to recover as damages; or

b. has been reduced by payment of claims for an amount which is not enough to pay the full amount the covered person is legally entitled to recover as damages.

Various courts have construed the phrase "legally entitled to recover" in similar UIM policies to mean that the insured must establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover UIM benefits. *See Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653 (Tex.2000); *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792 (Tex.1974); *State Farm Mut. Auto. Ins. Co. v. Grayson*, 983 S.W.2d 769, 770 (Tex.App.-San Antonio 1998, no pet.); *Mid–Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 811–12 (Tex.App.-Austin 1994, writ denied); *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 (Tex.App.-Austin 1992, no writ). The *Henson* court reasoned as follows:

The policies provided that the insurers will pay damages that a covered person is legally entitled to recover from an uninsured/underinsured motorist. When the jury found Contreras at fault for the accident and found Henson damaged by her negligence, Henson became legally entitled to recover from her. And because the damages exceeded Contreras' liability policy limits, Henson became entitled to the uninsured/underinsured motorist policy benefits, up to the policy limits. By the terms of the policies, no obligation to pay the claim existed until the jury established Contreras' liability. And the insurers paid the claim promptly after the jury made its findings. Because no contractual duty was breached, Henson had no right to

receive the benefits earlier than he in fact received them. Therefore no compensation is due for lost use of the funds. Thus Henson is not entitled to prejudgment interest on top of the benefits he is otherwise entitled to receive from the insurers.

17 S.W.3d at 654.

The above cases make clear that an insurer is not obligated to pay UIM benefits until the insured becomes legally entitled to those benefits. This will generally require a settlement with the tortfeasor or a judicial determination following trial on the issue of the tortfeasor's liability. Thus, an insurer has the right to withhold payment of UIM benefits until the insured's legal entitlement is established.

Insurance Code article 21.55 establishes procedures for the prompt payment of insurance claims. If an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than sixty days, the insurer shall pay damages and other items as provided for in Section 6. Tex. Ins.Code Ann. art. 21.55, § 3(f) (Vernon Supp.2001). Section 6 provides that in all cases where a claim is made pursuant to an insurance policy and the liable insurer does not comply with Article 21.55's requirements, the insurer must pay the insured, in addition to the amount of the claim, 18% of the claim as damages, plus reasonable attorney's fees. Id. § 6.[2] The plain objective of the statute

is to obtain prompt payment of claims, and we, as a court, must liberally construe the statute to promote its underlying purposes. Id. § 8. Article 21.55 "is simple and its language unambiguous." Northwestern Nat'l County Mut. Ins. Co. v. Rodriguez, 18 S.W.3d 718, 721 (Tex.App.-San Antonio 2000, pet. denied); Dunn v. Southern Farm Bureau Cas. Ins. Co., 991 S.W.2d 467, 474 (Tex.App.-Tyler 1999, pet. denied). Failure to comply with any of Article 21.55's requirements results in Section 6 penalties. See J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d 280, 288 (Tex. App.-San Antonio 2000, pet. denied); Dunn, 991 S.W.2d at 471; Mid–Century, 880 S.W.2d at 811–12.

Nothing in Article 21.55 suggests that an insurance company cannot dispute and deny a claim. In fact, the statute is premised on the presumption that carriers have the right to dispute claims. Dunn, 991 S.W.2d at 474. It merely requires that they do so promptly. Id.; see also Northwestern Nat'l, 18 S.W.3d at 721 (Article 21.55 does not require insurer to pay every claim within fifteen days, it merely requires steps be taken within that time). Further, nothing in Article 21.55 precludes an insurer from awaiting a judicial determination of an insured's "legal entitlement" to UIM benefits. It merely requires that the insurer notify the insured of its reasons for delaying the acceptance or rejection of a claim. Tex. Ins.Code Ann. art. 21.55, § 3(d).

The Wellisches assert that USAA's wrongful denial of their claim entitled them to Article 21.55 penalties.[3] The Wel-

2. To prevail Section 6, the insured must establish (1) a claim under an insurance policy (2) for which the insurer is liable and (3) that the insurer has not followed one or more sections of Article 21.55 with respect to the claim. Allstate Ins. Co. v. Bonner, 51 S.W.3d 289, 291 (Tex.2001). To establish the first

element, the insured must prove that the uninsured or underinsured driver negligently caused the accident that resulted in the covered damages and that all applicable policy provisions were satisfied. Id. at 292.

3. The USAA letter to the Wellisches denying their claim stated,

lisches rely on a line of cases that hold an insurer who denies a claim risks incurring Article 21.55 penalties, even if that denial is made in good faith. *See Cater v. United Serv. Auto. Ass'n,* 27 S.W.3d 81, 84 (Tex. App.-San Antonio 2000, pet. denied) (holding that when an insurer rejects a claim it necessarily fails to pay the claim within sixty days of its receipt of all items necessary to its coverage determination, thus subjecting the insurer to Article 21.55, section 3(f) penalties); *Marineau v. General Am. Life Ins. Co.,* 898 S.W.2d 397, 404 (Tex.App.-Fort Worth 1995, writ denied) (insurer's good faith, by itself, not a defense to the action of the statute); *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 461 (5th Cir.1997) (interpreting Article 21.55 and its predecessor to conclude that an insurer's good faith defense did not relieve the insurer of liability for damages for late payment, as long as the insurer is ultimately found liable for the claim); *Oram v. State Farm Lloyds,* 977 S.W.2d 163, 167 (Tex.App.-Austin 1998, no pet.) (adopting reasoning of *Higginbotham*). These cases do not support the Wellisches' conclusion.

In each of the above cases, the insurance companies' liability arose at the time of the covered event; therefore, the courts determined there was a "delay" in payment following the covered event. *See Cater,* 27 S.W.3d at 82 (liability for loss arising from damage to insured's foundation due to plumbing leak); *Marineau,* 898 S.W.2d at 400 (widow's entitlement to portion of life insurance proceeds at time of her husband's (the insured's) death); *see also Higginbotham,* 103 F.3d at 458 (liabil-

ity for loss arising from theft of insured's car); *Oram,* 977 S.W.2d at 165 (liability for loss arising from damage to insured's foundation due to plumbing leak). Here, USAA's liability did not arise on the date of the accident in which Jessica was fatally injured. USAA's liability arose on the date the trial court entered final judgment following a determination that Salinas' negligence caused the accident and a jury returned a verdict favorable to the Wellisches in the amount of $6 million. Because USAA paid the Wellisches' UIM claim on the same day the trial court entered the judgment, USAA did not violate Article 21.55's prompt payment provisions. We therefore affirm the summary judgment in favor of USAA on the Wellisches' Article 21.55 claim. For this reason, we do not address whether the trial court erred in denying the Wellisches' motion for summary judgment on their Article 21.55 claim.

### DAMAGES

The Wellisches alleged causes of action for breach of the common law duty of good faith and fair dealing; violations of Insurance Code articles 21.21, section 4(10)(ii), (iv), and (viii); and Insurance Code article 21.21–2, section 2(b)(4), (5). In addition to damages provided under the Insurance Code, the Wellisches asserted they were entitled to damages under Business and Commerce Code sections 17.50(a)(3)(4), 17.50(b)(1), and 17.50(d). The Wellisches' claims are premised on their assertion that USAA unreasonably denied their claim because there was no reasonable investigation into the claim.

> Although no sum of money could ever replace Jessica, we believe the elements of damage for Wrongful Death of an unemancipated minor under Texas law do not support payment of monies in excess of $1,000,000.00 you represent has been paid by the tortfeasor's insurers.

> Therefore, we respectfully deny your demand for the $300,000.00 policy limit of the UIM Coverage, as we do not believe the tortfeasor was underinsured for this unfortunate accident.

USAA filed motions for summary judgment on these claims, and on the ground that the Wellisches did not suffer economic damages as a result of its actions because they were awarded the $300,000 UIM policy limits. On appeal, the Wellisches do not challenge the summary judgment in favor of USAA on economic damages; instead, they challenge the summary judgment on only their mental anguish damages.

 To recover mental anguish damages, plaintiffs must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in their daily routine. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex.1997); *King v. Graham*, 47 S.W.3d 595, 609 (Tex.App.-San Antonio 2001, pet. filed 4–27–01). "In the context of bad faith actions, mental anguish damages will be limited to those cases in which the denial or delay in payment of a claim has seriously disrupted the insured's life." *Giles*, 950 S.W.2d at 54; *see also Izaguirre v. Texas Employers' Ins. Ass'n*, 749 S.W.2d 550, 553 (Tex.App.-Corpus Christi 1988, writ denied). To recover for mental anguish, the Wellisches had to prove such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *King*, 47 S.W.3d at 609. Mental anguish is something more than mere worry, anxiety, vexation, or anger. *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 394 (Tex.App.-Dallas 2000, pet. denied). It is more than disappointment, resentment, or embarrassment. *Id.*

 To recover damages under either the common law or the Insurance Code and DTPA, the violations must be a "producing cause" of the insured's damages. *See Castaneda*, 988 S.W.2d at 198 (manner in which claim is investigated must be proximate cause of damages); *see also*

*MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex.App.-San Antonio 2000, no pet.) (conduct prohibited by Insurance Code actionable only if plaintiff's actual damages result from that conduct); *Izaguirre*, 749 S.W.2d at 553 (a bad faith recovery is for damages arising from the bad faith act; for additional costs, hardship, or losses due to nonpayment of amounts owed); TEX. INS.CODE ANN. art. 21.21 § 16(a) (Vernon Supp.2001); TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon 1987).

Mr. Wellisch testified that he had been taking medication for panic disorder for about fifteen years. He sought counseling for a brief time after Jessica's death, but was not currently under the care of a psychiatrist, psychologist, or counselor. He thinks about the loss of Jessica every day. As to the dispute with USAA, he said there was nothing he and his wife were unable to do because they had not yet received the $300,000 from USAA. He said it has been an "extraordinary mental drill" because he and his family had a contract with USAA that it failed to honor, he thinks USAA considers Jessica's life worthless, and he wonders what he ever did to USAA to warrant "that kind of consideration." He said there has been a lack of information detailing why USAA denied their claim, and the "silence from USAA has been deafening." He stated, "It makes you wonder when you hear that other children that were involved in this accident that survived made [UIM] claims similar to our claim and in fact they were awarded the appropriate monies. It's extraordinarily hurtful, it's extraordinarily confusing, you might say it even drives one crazy to wonder why USAA would deny us when our daughter died." He said this has caused him a great deal of anguish, pain, confusion, frustration, and embarrassment. He also was hurt that USAA

wrote about Jessica in their magazine and then treated him and his wife in such a "confusing" manner. He thinks about the claim every day, and this has been distracting because "you never get to go on with your life ... it saps a great deal of emotional energy from you." Although he has not missed any work, he felt he was a less effective person. He felt abandoned by USAA, and he thinks USAA put him and his family through "a horrible process."

Mrs. Wellisch said she was under a doctor's care for angina, and she has been on medication for depression and anxiety since Jessica's death. She could not separate her physical malady over Jessica's death from the dispute with USAA, but she felt the dispute was part of her condition. She no longer trusts USAA, it was painful to sue USAA, she felt defensive, and she felt anxiety about being in court before jurors. She felt "injustice ... in the courtroom the day [USAA's attorney] picked up my daughter's pictures and dropped them on the table. It was as good as dropping Jessie." With regard to both her daughter's death and the dispute with USAA, she felt like "the guy who gets his legs run over by a train and somebody says, Did it hurt? How bad did it hurt? Tell me how bad that hurt? ... How does somebody tell you how it hurts? How does somebody explain anger?" She felt "grievously disappointed" and "assaulted." She was humiliated that her friends had to be witnesses at the trial, and USAA slowed down the grief process for her. She said going to court put pressure on her family, and during and after trial, she spoke to a counselor about her anxiety and frustration.

The Wellisches' testimony raises the possibility that their mental anguish stemmed from the denial of their claim, but not from USAA's failure to properly investigate the claim. *See Castaneda*, 988 S.W.2d at 199 (holding that any loss of credit reputation resulted from denial of benefits, not from any failure to communicate with insured or properly investigate her claim); *MacIntire*, 27 S.W.3d at 92 (plaintiff did not produce evidence of damages beyond denial of benefits). Therefore, the Wellisches did not raise a fact issue sufficient to defeat USAA's entitlement to summary judgment on their mental anguish claim. Because they did not raise a fact issue on damages, we affirm the summary judgment in favor of USAA on the Wellisches' common law bad faith claim for failure to investigate; their claim under Insurance Code articles 21.21 and 21.21–2; and their derivative DTPA claims.

## CONCLUSION

We affirm the trial court's judgment.