# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51113

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2015

Lyle W. Cayce
Clerk

INTERSTATE FIRE & CASUALTY COMPANY,

Plaintiff - Appellee Cross-Appellant

v.

CATHOLIC DIOCESE OF EL PASO,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:12-CV-221

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

PER CURIAM:*

We deal here with an apportionment dispute stemming from a claim for indemnification made by Catholic Diocese of El Paso (the "Diocese") upon its insurer, Interstate Fire & Casualty Co. ("Interstate"). The Diocese's indemnification claim arose from an underlying lawsuit against the Diocese and two other defendants, the Brothers of the Christian Schools ("NOSF") and Samuel F. Martinez, a "Brother." The lawsuit was settled prior to trial and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51113

required payment from only the Diocese.  Because the settlement released all claims against all defendants while the indemnification policy covered only the Diocese, Interstate argues that some portion of the settlement must have been intended to concern the claims against the other defendants.  Additionally, though largely successful at trial, the Diocese appeals the district court's ruling that it is not entitled to attorney's fees and statutory interest under § 542.060 of the Texas Insurance Code.

## BACKGROUND

Because this is an indemnification suit, the relevant facts relate to an underlying lawsuit and its settlement.  J.A. and D.A. (the "Plaintiffs") sued the Diocese, NOSF and Martinez.[1]  Two similar lawsuits against the same three defendants had previously settled for $1 million each, and NOSF had paid $700,000 and $900,000 in connection with those settlements.

While NOSF had previously borne primary financial responsibility for lawsuits involving this trio of defendants, it was "essentially insolvent" at the time of the underlying lawsuit.  Accordingly, the Plaintiffs looked solely to the Diocese for recompense.  Specifically, the Plaintiffs addressed their original settlement offer of $4.5 million only to the Diocese.  When the parties met for a day of mediation, the Plaintiffs' attorney ignored NOSF and dealt only with the Diocese.  At mediation, the Plaintiffs and the Diocese entered a tentative settlement agreement releasing only the claims against the Diocese in exchange for $1.2 million.

After this tentative agreement had been reached, NOSF asked the Diocese to seek a settlement that would release *all* claims against *all* defendants.  The Diocese, apparently doubting the effectiveness of a settlement

---

[1] The lawsuit also encompassed the claims of a third plaintiff, A.M.  These claims were not covered by the indemnification policy and were settled separately.  That settlement is not a subject of this dispute.

No. 14-51113

that did not end the lawsuit for good, sought the broad release. The Plaintiffs agreed to release all claims against all defendants, but the settlement amount remained $1.2 million. The formal settlement agreement required payment only from the Diocese.

After settling, the Diocese sought indemnification. Interstate responded with multiple requests for additional information. After receiving the information (and without notifying the Diocese of the claim's resolution), Interstate filed this action for declaratory relief in state court. The case was removed to federal court, and with the consent of all parties, the district court conducted a bench trial on written submissions. The heart of dispute turned out to be a factual question of apportionment: what portion of the $1.2 million settlement amount was intended to cover the claims against the Diocese? The district court found that the entirety of the settlement sum was so intended. That factual determination is the subject of Interstate's appellate challenge.

Within the order ruling in favor of the Diocese, the district court advised the parties that it would "separately consider and rule upon" motions for attorney's fees, interest and costs. The Diocese filed a cursory motion for attorney's fees, which was denied. The Diocese appeals.

INTERSTATE'S ARGUMENT ON APPEAL

As Interstate emphasizes, it appeals not from the district court's original ruling but rather from the denial of subsequent motions brought under Federal Rules of Procedure 52(b) and 59(e)—motions for reconsideration. Generally, we review the denial of a Rule 59(e) motion for abuse of discretion. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). A rule 59(e) motion not based on newly discovered evidence must "clearly establish" a "manifest error of law or fact." *Id.* (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). A district court's determination that it has made no manifest error of fact will

3

not be disturbed absent a "clearly erroneous assessment of the evidence." *Id.* (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005)).

The same standard applies to Rule 52(b) motions to amend findings of fact. *See Roadmaster (USA) Corp. v. Calmodal Freight Sys., Inc.*, 153 F.App'x 827, 829 (3d Cir. 2005) (per curiam); *see also Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990) (explaining that the purpose of a Rule 52(e) motion is to "permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court"); *Niagara Fire Ins. Co. v. Everett*, 292 F.2d 100, 103 (5th Cir. 1961) ("The findings of the district court are not lightly to be set aside.").

The law governing apportionment disputes is not controverted.

> In a dispute between an insurer and its insured concerning an underlying settlement that may have included both covered and non-covered claims under the insurance policy, it is appropriate for the district court to make findings necessary to apportion the settlement between damages that the insurer owes and damages for which the insured has a duty to pay.

*Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 656 (5th Cir. 2008). The goal is to "determine what portion of the settlement was reasonably intended to concern claims covered by the policy at issue." *Id.* at 657.

According to Interstate, the district court's "findings and conclusions should have been amended to reflect a 70% to 90% allocation, and the judgment against Interstate amended accordingly." In other words, Interstate believes the parties intended for "70% to 90%" of the $1.2 million settlement sum to cover the claims against NOSF and Martinez. There is essentially no evidence supporting this wholly meritless argument.

Interstate's position is based not on the settlement of the Plaintiffs' lawsuit but rather on the naked fact that NOSF previously paid the lion's share of two somewhat related settlements. It seems doubtful, however, that a pattern can be derived from consideration of only two prior lawsuits. More

importantly, the undisputed evidence here is that *after* settling those two prior lawsuits and *before* settling the Plaintiffs' lawsuit, NOSF announced insolvency. These changed circumstances render NOSF's past contributions meaningless. If anything, the evidence is that NOSF would *not* contribute to this settlement as it had in the past.

Indeed, practically all of the evidence suggests that the entirety of the $1.2 million settlement sum was intended to cover the claims against the Diocese. The Plaintiffs did not look to NOSF or Martinez for compensation. Their settlement demand was addressed only to the Diocese. At mediation, they dealt only with the Diocese. And perhaps most importantly, the $1.2 million figure reached was originally intended to settle *only* the claims against the Diocese. Only after this figure was reached did NOSF ask the Diocese if it would attempt to obtain a broader release. The Diocese had a legitimate motive to seek complete settlement of a lawsuit with which it might have continued involvement. Further, it can reasonably be inferred that the Plaintiffs viewed their claims against NOSF and Martinez to be essentially valueless; NOSF had already claimed insolvency, and Martinez was an individual who had already been on the wrong side of multiple million-dollar settlements.

Given the complete lack of evidence suggesting an intent to allocate any portion of the $1.2 million settlement to the claims against NOSF and Martinez and the uniformity of evidence suggesting settlement of those claims was instead a mutually convenient afterthought, there is no basis upon which we might find the district court made a manifest error of fact.

## THE DIOCESE'S ARGUMENT ON APPEAL

An insured is entitled to attorney's fees and other penalties set forth in § 542.060 of the Texas Insurance Code if it can show "(1) a claim under an insurance policy (2) for which the insurer is liable and (3) that[, with respect

to the claim,] the insurer has not followed one or more sections of" Chapter 542—*i.e.*, the Prompt Payment of Claims Act. *Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 (Tex. App. 2002); *see also Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, No. 13-20529, 2015 WL 4590252, at *12 (5th Cir. July 30, 2015).

Here, the Diocese had an indemnification claim for which Interstate was liable. Thus, only the third element is at issue. Specifically, as the Diocese states, this "appeal is confined to whether the Diocese has alleged and proven a claim under § 542.056(a) of the Texas Insurance Code." Section 542.056(a) requires insurers, under most circumstances, to "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." We review for clear error the district court's conclusion that the Diocese did not prove a § 542.056(a) violation. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000); Fed. R. Civ. P. 52(a)(6), (c).

Instead of notifying the Diocese "of the acceptance or rejection of [its] claim," Interstate sued for declaratory relief. It did so more than a month after receiving all necessary information from the Diocese. Were we considering the Diocese's argument in the first instance, these simple facts suggest a likely entitlement to attorney's fees and statutory interest under the Prompt Payment of Claims Act. *See Cox Operating, L.L.C.*, 2015 WL 4590252, at *11–12. We are an appellate court, however, tasked with determining whether the district court erred. Because the Diocese did not sufficiently brief and argue its § 542.060 claim below, we deem the issue waived.

"An argument not raised before the district court cannot be asserted for the first time on appeal." *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008). To avoid waiver, "an argument must be

raised to such a degree that the trial court may rule on it." *Brown v. Ames*, 201 F.3d 654, 663 (5th Cir. 2000) (internal quotations marks and citation omitted).

When moving for attorney's fees and statutory interest, the Diocese did not cite § 542.056(a), the very provision it now asserts is the sole basis of its appeal. And, the Diocese did not identify the facts that would show a § 542.056(a) violation—*i.e.*, the date Interstate was provided with "all items, statements, and forms required by the insurer to secure final proof of loss" and Interstate's failure to provide written notice of its decision. Consequently, the Diocese did not provide the district court with *any* analysis or argument relating to § 542.056(a). The Diocese's substantive argument, if it can be called one, consisted of one paragraph:

> In the Findings of Fact and Conclusions of Law [Dkt. No. 41] the Court ordered and declared that Interstate is liable to reimburse the Diocese for the amounts paid by the Diocese in settlement of the Underlying Lawsuit. By virtue of the above described Endorsement and applicable Texas law, the Diocese is also entitled to recover costs and nontaxable expenses incurred in the Underlying Lawsuit, and attorneys' fees in defense of the claim.

This is insufficient. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.").

In summation, the Diocese's failure to cite the relevant law, failure to identify the relevant facts, and failure to provide any analysis linking the law and the facts doomed its request for § 542.060 penalties and effected a waiver. The Diocese did not adequately present its § 542.056(a) argument to the district court, s*ee* Fed. R. Civ. P. 7(b)(1)(B) (requiring movants "state with particularity the grounds for seeking" relief), and denial of relief is directly attributable to this failure. Indeed, the district court later expressly explained it had denied the Diocese's motion for attorney's fees "because (i) Diocese's

No. 14-51113

*failure to specify the cause of action* it was attempting to allege under Chapter 542 and (ii) *the lack of evidence and argument* that showed how Interstate violated Chapter 542."[2]  (Emphases added.)

We do not countenance the Diocese's request for a do-over.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] After denial of its motion for attorney's fees, the Diocese sought reconsideration with motions brought under Federal Rules of Civil Procedure 52(b) and 59(a).  It was in denying these motions that the district court noted the lack of evidence and argument relating to a Chapter 542 violation.  Remarkably, neither of these motions mentioned § 542.056(a).