# IN THE SUPREME COURT OF TEXAS

No. 17-0640

BARBARA TECHNOLOGIES CORPORATION, PETITIONER,

v.

STATE FARM LLOYDS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

JUSTICE BOYD, concurring in part and dissenting in part.

The Texas Prompt Payment of Claims Act, TEX. INS. CODE §§ 542.051–.061, requires an insurer that fails to timely respond to or pay an insurance claim to pay interest and attorney's fees in addition to the policy benefits. But does it require an insurer to pay interest and fees if the insurer initially rejects the claim—and thus fails to timely pay it—but later voluntarily pays it after the insured files suit? What if (as happened here) the insurer rejects the claim, the insured files suit, and the insurer then voluntarily and unconditionally pays the claim based on an amount determined through an agreed-upon appraisal process?

The Court holds that the Act requires the insurer to pay interest and fees in such circumstances, but only if the insurer either (1) "accepts the claim, thereby admitting liability" for the policy benefits, or (2) is "adjudicated liable [for the policy benefits] by a court or arbitration panel." *Ante* at ___. Concluding that the insurer here did not "accept the claim" by voluntarily and unconditionally paying the appraisal amount, and that neither party conclusively established

whether the insurer was liable for the benefits claimed, the Court reverses the court of appeals' judgment and remands the case to the trial court to determine whether the insurer was liable for the benefits it has already paid or whether the insured's claim was invalid and should not have been paid. *Ante* at ___.

Like the Court, I conclude that the insurer's invocation of the appraisal process does not affect the insurer's obligations under the Prompt Payment of Claims Act. And I, too, would reverse the court of appeals' judgment and remand to the trial court for further proceedings. But unlike the Court, I conclude that, by voluntarily and unconditionally paying the benefits claimed, the insurer conceded both its liability and the claim's validity. I would therefore remand solely for a determination of the amount of statutory interest and attorney's fees the insurer owes the insured. The Court reverses and remands, but for a different determination, so I respectfully concur in part and dissent in part.

**I.**
**Background**

**A.     The Prompt Payment of Claims Act**

The Act imposes several specific requirements on insurers.

- *First*, within fifteen days after receiving notice of a claim,[1] the insurer must (1) acknowledge receipt of the claim, (2) commence its investigation of the claim, and (3) "request from the claimant all items, statements, and forms the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055(a).[2]

---

[1] "'Notice of claim' means any written notification provided by a claimant to an insurer that reasonably apprises the insurer of the facts relating to the claim." TEX. INS. CODE § 542.051(4). The Act grants eligible surplus lines insurers thirty business days instead of fifteen days. *Id.* § 542.055(a).

[2] "An insurer may make additional requests for information if during the investigation of the claim the additional requests are necessary." *Id.* § 542.055(b).

2

- *Second*, within fifteen business days of receiving all "items, statements, and forms required by the insured to secure final proof of loss," the insurer must give the claimant written notice either rejecting or accepting the claim. *Id.* § 542.056(a).[3]

- *Third*, if the insurer rejects the claim, its notice to the claimant "must state the reasons for the rejection." *Id.* § 542.056(c).

- And *fourth*, if the insurer accepts the claim in whole or in part, it must "pay the claim not later than the fifth business day" after sending the notice of acceptance. *Id.* § 542.057(a).[4]

To summarize:



---

[3] If the insurer reasonably believes the loss resulted from arson, the Act grants the insurer thirty days (instead of fifteen business days) to accept or reject the claim. *Id.* § 542.056(b). If the insurer "is unable to accept or reject the claim" by the fifteen-business-day deadline, it must notify the insured by that same deadline of the reasons it needs additional time. *Id.* § 542.056(d). Then it must reject or accept the claim within forty-five days after sending that notice. *Id.*

[4] If the insurer notifies the claimant that it will pay the claim only after the claimant performs a particular act, the insurer must pay the claim within five business days after the claimant performs that act. *Id.* § 542.057(b). The Act grants eligible surplus-lines insurers twenty business days to pay the claim instead of five business days. *Id.* § 542.057(c).

3

As this flowchart illustrates, sections .055, .056, and .057 impose no payment obligation or deadline when the insurer *rejects* a claim for policy benefits. But if the insurer *accepts* the claim, the Act requires it to pay the claim within five business days. *Id.* § 542.057(a).

After listing these requirements, the Act describes two independent circumstances in which insurers must pay statutory interest and attorney's fees:

- *First*, if an insurer "delays payment of the claim" for more than sixty days[5] after it receives all reasonably required "items, statements, and forms" from the claimant, it "shall" pay interest and attorney's fees "as provided by Section 542.060," unless "it is found as a result of arbitration or litigation" that the claim "is invalid and should not be paid." *Id.* § 542.058(a), (b).[6]

- *Second*, if an insurer "is liable for a claim under an insurance policy" and "is not in compliance with" the Act,[7] it must pay, "in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." *Id.* § 542.060(a).

Finally, "If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case." *Id.* § 542.060(b).[8]

---

[5] If another applicable statute provides a different time period for payment, that time period applies instead of the sixty-day period. *Id.* § 542.058(a).

[6] The Act grants a "life insurer" ninety days to either pay the claim or "properly file an interpleader action." *Id.* § 542.058(c). A court may extend these deadlines for certain insurers for good cause, and the Act automatically extends them in "the event of a weather-related catastrophe or major natural disaster." *Id.* § 542.059.

[7] Section .060 refers to compliance with "this subchapter." *Id.* § 542.060(a). The section appears within subchapter B of chapter 542, which constitutes the Prompt Payment of Claims Act. *Id.* §§ 542.051–.061.

[8] An insurer's obligation to pay interest and fees depends solely on whether the insurer "delays payment on a claim" or fails comply with the Act's requirements; it does not depend on the insurer's unreasonableness, negligence, intentional noncompliance, bad faith, or breach of some other standard. *Id.* §§ 542.058(a), .060(a); *see Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997) ("[A]n insurance company's good faith assertion of defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally judged liable."); *Cater v. United Servs. Auto. Ass'n*, 27 S.W.3d 81, 84 (Tex. App.—San Antonio 2000, pet. denied) (noting that because "[t]here is no good faith exception within the statute's plain language," insurer who "chose to reject" claim for policy benefits "necessarily . . . failed to pay the claim within sixty days" and thus violated the statute, "even if in good faith, and subjected itself to [statutory] damages"); *Marineau v. Gen. Am. Life Ins. Co.*, 898 S.W.2d 397, 404 (Tex. App.—Fort Worth 1995, writ denied) ("Good faith of the insurer, by itself, is not a defense to

Two of the Act's features are particularly relevant in this case. First, the Act identifies two separate deadlines by which the insurer must pay a claim for benefits: (1) five business days after the insurer notifies the claimant that it will pay all or part of the claim, *id.* § 542.057(a), or (2) sixty days after the insurer receives all requested and reasonably required items, statements, and forms (unless "other applicable statutes" impose a different deadline), *id.* § 542.058(a). And second, the Act requires the insurer to pay interest and fees under two different circumstances: (1) when the insurer delays payment for more than sixty days after it receives all items, statements, and forms, *unless* it is determined through arbitration or litigation that the claim "is invalid and should not be paid," *id.* § 542.058(b), or (2) when the insurer is not in compliance with the Act, *if* the insurer "is liable" on the claim, *id.* § 542.060(a).

## B. State Farm's response to Barbara Tech's claim

State Farm fully and timely complied with all the requirements of sections .055, .056, and .057. It acknowledged the claim and inspected the property thirteen days after receiving the claim. Five days later, it notified Barbara Tech that it would not pay any benefits under the policy because it had determined that the covered loss totaled just over $3,000, which was less than the policy's deductible.[9] It thus timely acknowledged the claim, opened its investigation, requested information from the claimant, rejected the claim, and provided its reasons for the rejection.

Unwilling to accept State Farm's position, Barbara Tech filed suit. More than five months later, State Farm invoked the policy's appraisal process. The appraisers found that Barbara Tech's

the action of the statute.") (citing *N.Y. Life Ins. Co. v. Veith*, 192 S.W. 605, 606 (Tex. Civ. App.—San Antonio 1917, no writ)).

[9] More than three months later, Barbara Tech requested that State Farm re-inspect the property. Eleven days after receiving that request, State Farm again refused to pay any benefits.

loss totaled just over $195,000—more than sixty-five times the amount State Farm had found before rejecting the claim. Ultimately, 664 days after first inspecting the property, 659 days after completing its investigation and rejecting the claim, and seven days after receiving the appraisal report, State Farm voluntarily and unconditionally paid the appraisal amount, less depreciation and the deductible.

Against this backdrop, the two issues are (1) whether State Farm, having voluntarily and unconditionally paid the claim for benefits—but having "delayed payment" for more than sixty days after receiving all the information it required from Barbara Tech—is also obligated to pay statutory interest and attorney's fees and (2) whether State Farm's invocation of the appraisal process changes the analysis under the Act.

## II.
## Appraisal

As the Court acknowledges, the Act does not "mention appraisals or how invocation of an appraisal process affects the [Act's] deadlines and requirements." *Ante* at ___. And as the Court explains, the appraisal process, at least under this policy's provision, could only resolve the parties' dispute over the value of the property and amount of the loss. *See ante* at ___ n.14. It could not and did not determine or affect coverage, the claim's validity, or State Farm's liability. Even after appraisal, State Farm retained the right to either deny the claim or voluntarily pay it.

With but one exception, a long line of state[10] and federal[11] courts have consistently held

that an insurer that makes a full and timely[12] payment of an appraisal award is not obligated to pay

[10] *See Hinojos v. State Farm Lloyds*, 569 S.W.3d 304, 313 (Tex. App.—El Paso 2019, pet. pending) ("[B]ecause State Farm made a reasonable payment on Hinojos's claim within the sixty-day statutory limit, the subsequent payment resulting from the appraisal process did not mean State Farm violated the prompt payment deadlines of the insurance code."); *Marchbanks v. Liberty Ins. Corp.*, 558 S.W.3d 308, 312–13 (Tex. App.—Houston [14th Dist.] 2018, pet. pending) (holding that "full and timely payment of the amount owed under the policy based on an appraisal award precludes as a matter of law a recovery on a claim under the prompt-payment statute" because payment of "an appraisal award does not resolve whether the insurer is liable under the insurance policy"); *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2018, pet. pending) ("As this court has recognized, full and timely payment of an appraisal award under the policy precludes as a matter of law an award of penalties under the Insurance Code's prompt-payment provisions."); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2017, pet. pending) ("As this court has recognized, full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."); *Gusma Props., L.P. v. Travelers Lloyds Ins. Co.*, 514 S.W.3d 319, 329 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("[A]n insurer does not delay payment of a claim within the meaning of the Prompt Payment provisions by withholding disputed payments pending appraisal under an insurance policy."); *Garcia v. Lloyds*, 514 S.W.3d 257, 275 (Tex. App.—San Antonio 2016, pet. denied) ("[A] long line of cases has held that full and timely payment of an appraisal award under the policy precludes an insured from recovering penalties under the Act as a matter of law.") (citing *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563–64 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ( "Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law.")); *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00257-CV, 2016 WL 3438243, at *5 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.) ("[F]ull and timely payment of an appraisal award under the policy precludes an insured from recovery of penalties under section 542.058 as a matter of law.") (citing *In re Slavonic*, 308 S.W.3d at 563); *Bernstien v. Safeco Ins. Co. of Ill.*, No. 05-13-01533-CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas, June 30, 2015, no pet.) (mem. op.) ("[T]imely payment of an appraisal award under the policy precludes an award of statutory penalties under the Texas Insurance Code chapter 542."); *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, at *4 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.) ("Texas courts that have considered the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of [the Act's] penalties as a matter of law."); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 345 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (concluding same).

[11] *See, e.g.*, *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 259 (5th Cir. 2017) (concluding in an *Erie* guess that the Supreme Court of Texas would agree "with all the lower courts in the state that have addressed the issue in the context of postappraisal payments"); *Garcia v. Liberty Ins. Corp.*, No. CV H-17-1587, 2019 WL 825883, at *8 (S.D. Tex. Jan. 17, 2019), *report and recommendation adopted*, No. CV H-17-1587, 2019 WL 1383011 (S.D. Tex. Mar. 27, 2019) ("Timely payment of the entire appraisal award 'precludes as a matter of law a recovery on a claim under the prompt-payment statute.'") (quoting *Marchbanks*, 558 S.W.3d at 312); *Neff v. Allstate Vehicle & Prop. Ins. Co.*, No. 5:17-CV-191-DAE, 2019 WL 1560473, at *6 (W.D. Tex. Feb. 28, 2019) (holding insurer not liable under the Act because insurer "paid the appraisal award to Plaintiffs within 5 business days after notifying Plaintiffs that [insurer] would pay the claim"); *Dean v. State Farm Lloyds*, No. 5:16-CV-1321-DAE, 2018 WL 6430534, at *8–9 (W.D. Tex. Nov. 20, 2018) (holding insurer not liable for statutory interest or fees because insurer's "voluntary payment of an appraisal award does not imply liability" and insurer "made a full and timely payment of the appraisal award to Plaintiff"); *Gamez v. State Farm Lloyds*, No. 5:17-CV-508-DAE, 2018 WL 2251364, at *3 (W.D. Tex. Mar. 19, 2018) (quoting *In re Slavonic*, 308 S.W.3d at 563); *SPJST Lodge #154 & Am. Sokol Org. v. Century Sur. Co.*, No. 4:15-CV-00710-O, 2017 WL 5642613, at *3 (N.D. Tex. Apr. 11, 2017) (agreeing that a "full and timely payment of an appraisal award" precludes an award under the Act) (citing *Garcia*, 2016 WL 7234064, at

7

statutory interest or attorney's fees even if it previously failed to comply with the Act or timely pay the claim. In most of these decisions, however, the courts simply recited that rule without conducting any statutory analysis.[13] Those that have described a basis for the rule have offered three justifications, but none of them actually justifies the holding.

First, a few courts have reasoned that an insurer that timely pays some portion of the claim and then pays the full appraisal amount is not liable under the Act because the "fact that the appraisal process was later invoked does not alter the fact that [the insurer] complied with the insurance code, and provided a reasonable payment within a reasonable time" before invoking the

*12); *Carter v. State Auto Prop. & Cas. Ins. Co.*, No. 6:14-CV-00468, 2016 WL 4401292, at *3 (W.D. Tex. Jan. 6, 2016) ("Once an insurer timely pays an appraisal award, the insurer's liability for the initial underpayment becomes extinguished. . . . As a result, irrespective of whether the insured initially underpays the claim, compliance with a contract's appraisal provision extinguishes any claim for attorneys' fees and statutory interest stemming from a prompt pay deadline imposed by § 542.058.") (internal citations and footnote omitted) (citing *Mag-Dolphus, Inc. v. Ohio Caus. Ins. Co.*, 906 F. Supp. 2d 642, 652 (S.D. Tex. 2012)); *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 598 (S.D. Tex.) ("Under Texas law, timely payment of an appraisal award under the policy precludes an award of statutory penalties under the Texas Insurance Code §§ 541 and 542 as a matter of law.") (citing *Breshears*, 155 S.W.3d at 344; *Amine*, 2007 WL 2264477, at *4–6; *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, No. Civ. A. H-09-3479, 2011 WL 819491, at *3 (S.D. Tex. Mar. 2, 2011), *aff'd*, 459 Fed. App'x 366 (5th Cir. 2012); *Waterhill Cos. Ltd. v. Great Am. Assurance Co.*, No. Civ. A. No. 05-4080, 2006 WL 696577, at *2 (S.D. Tex. Mar. 16, 2006)), *aff'd*, 624 F. App'x 225 (5th Cir. 2015); *Scalise v. Allstate Tex. Lloyds*, No. 7:13-CV-178, 2013 WL 6835248, at *6 (S.D. Tex. Dec. 20, 2013) ("[M]ore relevant authority directs that an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process . . . before paying all covered damages determined by that process."); *Waterhill*, 2006 WL 696577, at *3 ("A delay in payment pursuant to the appraisal process does not constitute [a] violation [of the Act].").

[12] Because the Act does not address appraisals at all, the timeliness of any appraisal payment must be based on deadlines provided in the policy's appraisal provision, if any, and not on anything within the Act. But a payment that is timely under a policy appraisal provision may not be timely under the Act.

[13] *See, e.g.*, *Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 988 (5th Cir. 2016) ("[A] plaintiff may not seek Chapter 542 damages for any delay in payment between an initial payment and the insurer's timely payment of an appraisal award.") (citing *In re Slavonic*, 308 S.W.3d at 563); *Mattox v. Safeco Ins. Co. of Ind.*, No. 1:16-CV-1037-DAE, 2018 WL 3603102, at *4 (W.D. Tex. May 29, 2018) (quoting *In re Slavonic*, 308 S.W.3d at 563); *McEntyre v. State Farm Lloyds, Inc.*, No. 4:15-CV-00213, 2016 WL 6071598, at *6 (E.D. Tex. Oct. 17, 2016) (same); *Studer v. Lloyds*, No. 4:13-CV-413, 2016 WL 4063782, at *8 (E.D. Tex. July 29, 2016) (same); *Barry v. Allstate Tex. Lloyds*, No. 4:14-CV-00870, 2015 WL 1470429, at *6 (S.D. Tex. Mar. 31, 2015) (same); *Michels v. Safeco Ins. Co. of Ind.*, No. A-12-CA-511-SS, 2013 WL 12076562, at *5 (W.D. Tex. Mar. 13, 2013) (same), *aff'd,* 544 F. App'x 535 (5th Cir. 2013); *Mag-Dolphus*, 906 F. Supp. 2d 642, 652 (S.D. Tex. 2012) (same); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. CIV.A. H-09-3828, 2011 WL 3236192, at *9 (S.D. Tex. July 27, 2011) (citing *In re Slavonic*, 308 S.W.3d at 563).

appraisal process. *Breshears*, 155 S.W.3d at 345.[14] Of course, this reasoning could not apply here because State Farm did not make *any* payment before the deadline or before invoking the appraisal process, and its valuation of the loss at 1/65 of the appraisal amount was in no way "reasonable." But more fundamentally, the Act does not require statutory interest and attorney's fees based on the violation of a reasonableness standard.[15] When the insurer fails to timely acknowledge, investigate, or pay all or part of the claim, the Act requires it to pay interest and fees regardless of whether it paid a "reasonable" amount. *See* TEX. INS. CODE §§ 542.058, .060.

Second, a few courts have reasoned that insurers that pay an appraisal award are not obligated to pay statutory interest and fees because the voluntary payment of an appraisal award does not establish that the insurer "is liable" for the claim under section .060. *See Amine*, 2007 WL 2264477, at *5 (reasoning that the insurer's voluntary payment of the appraisal award did "not constitute a finding of liability" as the Act requires).[16] As discussed more thoroughly below, however, section .060's "is liable" requirement does not apply when the insurer *rejects* the claim—

---

[14] *See also Hinojos*, 569 S.W.3d at 313 ("[B]ecause [the insurer] made a reasonable payment on [the insured's] claim within the sixty-day statutory limit, the subsequent payment resulting from the appraisal process did not mean [the insurer] violated the prompt payment deadlines of the insurance code.") (citing *Breshears*, 155 S.W.3d at 345).

[15] To be sure, the Act elsewhere accounts for "reasonableness," but not as to the insurer's initial decision on whether to pay the claim (and if so, how much to pay). *E.g.*, TEX. INS. CODE §§ 542.056(b) (providing an extra fifteen days for written notice of acceptance or rejection if an insurer "has a *reasonable basis to believe* that a loss resulted from arson") (emphasis added), .059(a) ("A court may grant a request by a guaranty association for an extension of the periods under this subchapter on a showing of good cause and after *reasonable notice* to policyholders.") (emphasis added). Thus, the legislature "clearly knew how" to account for whether the insurer acted reasonably in initially accepting or rejecting the claim. *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000) ("The Legislature clearly knew how to require that the actor have knowledge of the Election Code before being charged with a violation. Because the Legislature did not include a similar knowledge requirement in section 253.131, we should not presume to add that requirement ourselves.") (footnoted omitted).

[16] *See also Marchbanks*, 558 S.W.3d at 313 ("[A]n appraisal award does not resolve whether the insurer is liable under the insurance policy."); *Dean*, 2018 WL 6430534, at *8 (reasoning that insurer's "voluntary payment of an appraisal award does not imply liability"); *Carter*, 2016 WL 4401292, at *3 ("Once an insurer timely pays an appraisal award, the insurer's liability for the initial underpayment becomes extinguished").

and even if it did, an insurer concedes its liability for policy benefits by voluntarily and unconditionally paying those benefits.

And third, at least one court suggested that insurers that pay an appraisal award are not obligated to pay statutory interest and fees because the parties contractually agreed "to abide by" the "appraisal valuation of the loss via the appraisal clause of the insurance policy." *Perry v. United Servs. Auto. Ass'n*, No. 07-18-00031-CV, 2018 WL 6442050, at *2–3 (Tex. App.—Amarillo Dec. 7, 2018, pet. pending) (mem. op.) (citing *Hall v. Germania Farm Mut. Ins. Ass'n*, No. 07-16-00304-CV, 2017 WL 4630028, at *4 (Tex. App.—Amarillo Oct. 13, 2017, no pet.) (recognizing that an appraisal award made under the provisions of an insurance contract is binding and enforceable and that tendering the full amount owed pursuant to the conditions of an appraisal clause is all that is required to estop the insured from raising a breach of contract claim)). But whether an insurer that pays an appraisal award as agreed in the policy can be liable for *breaching the contract* presents a different question. Here, the issue is whether the Act requires an insurer that rejected the claim and then paid the appraisal amount after section .058's sixty-day deadline to pay statutory interest and attorney's fees. The appraisal process resolves the parties' dispute only over the amount of the loss. It does not extend the statutory deadline by which the insurer was required to pay the amount of the loss.

One federal district court disagreed with the other state and federal decisions, recognizing that the Act does not provide a good-faith defense but instead holds insurers "strictly liable for their failure to promptly pay insurer's claims where liability has been established" and holding that an insurer's "full and timely payment of the appraisal award does not preclude Plaintiff's claim for statutory interest under the [Act] as a matter of law." *Graber v. State Farm Lloyds*, No. 3:13-

10

CV-2671-B, 2015 WL 3755030, at \*10 (N.D. Tex. June 15, 2015) (footnote omitted). The Fifth Circuit rejected that court's holding, however, based on "an *Erie* court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense." *Mainali*, 872 F.3d at 259. Although the Fifth Circuit did not completely reject the *Graber* court's reasoning, it concluded that it was not "enough to divine that the Supreme Court of Texas would disagree with all the lower courts in the state that have addressed the issue in the context of postappraisal payments." *Id.*

In this case, State Farm and its amici raise an argument that the courts have not previously addressed. They note that section .055 authorizes an insurer that receives a notice of claim to "request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant," and then to "make additional requests for information if during the investigation of the claim the additional requests are necessary." TEX. INS. CODE § 542.055(a), (b). Section .056 then requires the insurer to accept or reject the claim within fifteen business days after the insurer "receives all items, statements, and forms required by the insurer to secure final proof of loss." *Id.* § 542.056(a). And section .058 requires the insurer to pay statutory interest and fees if it delays payment for more than sixty days after "receiving all items, statements, and forms reasonably requested and required under Section 542.055." *Id.* § 542.058(a). Relying on these provisions, State Farm argues that it did not delay payment for more than sixty days because the appraisal report is part of the "items, statements, and forms" and additional "information" it required to "secure final proof of loss." Because it paid the claim within fifteen days after receiving the appraisal report, State Farm contends that it timely paid the claim

11

under section .058. The CHIEF JUSTICE dissents from today's decision because he agrees with this argument. *See post* at ___ (HECHT, C.J., dissenting).

Two of the Act's provisions, however, negate this proposed construction. First, the statute specifically refers to "items, statements, and forms" the insurer "request[s] *from the claimant*," and insurers do not request or obtain appraisal reports from the claimant. TEX. INS. CODE § 542.055(a) (emphasis added). And second, the Act refers to such information as information the insurer reasonably requires "during the investigation" to "secure final proof of loss." *Id.* §§ 542.055(b), .056(a). As the Court recognizes, State Farm necessarily completed its investigation and secured final proof of loss when it rejected Barbara Tech's claim—long before it invoked the appraisal process or received the appraisal report. I agree with the Court that, by rejecting the claim, State Farm confirmed it had received all the information it needed to determine whether Barbara Tech had sustained a loss the policy covered, and thus the appraisal it later requested couldn't be part of the information that triggered the Act's payment deadlines.

In short, the appraisal process provides an alternative to litigating only the property's value and the amount of the loss; it does not provide an alternative to litigating coverage, the claim's validity, the insurer's liability, or the insurer's compliance with the Act. The appraisal process, in other words, addresses only the amount of the claim, but the Act's interest and fees depend on *when* the insurer pays the claim, not on the *amount* of claim.

### III.
### Statutory Interest and Attorney's Fees

Having determined that State Farm's invocation of appraisal does not affect the analysis, the remaining issue is whether State Farm, having voluntarily and unconditionally paid the claim for benefits, but having paid more than sixty days after receiving all the information it required

12

before rejecting the claim, is obligated to pay statutory interest and attorney's fees. Under the Act's plain language, I must conclude it is. State Farm fully and timely complied with all the Act's requirements under sections .055, .056, and .057, and initially rejected the claim. It ultimately paid the claim, but it delayed that payment for more than sixty days after it received all the information it reasonably required from Barbara Tech to decide to reject the claim. When an insurer delays payment for more than sixty days after receiving all information reasonably required from the claimant, section .058 requires the insurer to pay interest and fees. TEX. INS. CODE § 542.058(a). Section .058 does not apply if "it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer," *id.* § 542.058(b), but there's been no such finding in this case.

In addressing State Farm's obligation to pay statutory interest and attorney's fees, the Court first "assume[s] without deciding that section 542.060 provides the applicable standard for Barbara Tech to succeed on its claim." *Ante* at ___. Next, the Court holds that State Farm's voluntary and unconditional payment "neither established liability under the policy nor foreclosed" interest and fees under that section. *Ante* at ___. Finally, the Court notes that on remand, "the parties will have the opportunity to present argument" on whether section .058 should apply instead of section .060. *Ante* at ___.

Because the Court does not decide whether section .058 or .060 applies, the trial court will have to make that determination on remand. I would hold that section .058 applies, and section .060 does not. To assist the trial court in that analysis, I explain the three reasons I conclude the Act's plain language requires that result. First, sections .058 and .060 cannot both apply simultaneously: though they impose the same standard, they impose conflicting burdens of proof.

Second, section .060 does not apply because State Farm fully complied with the Act's requirements. And third, even if we could somehow read section .058 and .060 together, section .058 would control because State Farm's only non-compliance was with section .058's sixty-day deadline. Finally, I conclude that, regardless of which section governs, State Farm owes interest and fees because it conceded both the claim's validity and its own liability under the policy by voluntarily and unconditionally paying the benefits.

## A.     Sections .058 and .060 cannot both apply.

The Court remands this case for further proceedings and suggests that, on remand, the trial court should apply both sections .058 and .060, reading them together. *See ante* at ___. But the trial court cannot apply both sections because they impose opposite burdens on the same issue. These sections enforce different payment deadlines and require an insurer to pay interest and fees under different circumstances. Section .058 (which enforces a sixty-day payment deadline) cannot apply if an insurer *accepts* a claim because section .057 requires an insurer that accepts a claim to pay within five business days. And conversely, section .060 (which applies only when the insurer "is not in compliance") cannot apply when an insurer that *rejects* a claim complies with the Act's requirements.

Applying both section .058 and section .060 would necessarily create an irreconcilable conflict, not only in construing the Act but also in submitting a claim for interest and fees to a jury. *See Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 276 (Tex. 2012) (per curiam) (discussing conflicts in jury findings). Although section .058's reference to the claim's invalidity and section .060's reference to whether the insurer "is liable" for the claim invoke the same standard—that the insured is entitled to benefits under the policy—the two sections require opposite findings and put the

14

burden of proof on opposite parties. By requiring a late-paying insurer to pay interest and fees "unless" the claim for benefits is invalid and should not be paid, section .058 puts the burden on the insurer to establish the claim's invalidity. And by requiring a non-compliant insurer to pay interest and fees if the insurer "is liable" for policy benefits, section .060 puts the burden on the insured to establish the insurer's liability.

The Court says that, on remand, (1) Barbara Tech can seek to prove "that State Farm owed Barbara Tech benefits under the policy, is therefore 'liable' under the policy, and thus owes" interest and fees under the Act, *and* (2) State Farm can seek to "challenge that assertion of liability" and prove that "it owed no benefits under the policy" or "that Barbara Tech's claim is invalid and should not have been paid," so that it need not pay interest and fees under the Act. *Ante* at ___. But both parties cannot bear opposite burdens on the same issue: if Barbara Tech obtained a finding that State Farm was liable and State Farm obtained a finding that the claim was invalid, the findings would irreconcilably conflict, *see Arvizu*, 364 S.W.3d at 276, and indeed, the trial court would err by submitting both questions. Yet to the extent that the Court's analysis would place the burden entirely on Barbara Tech—requiring Barbara Tech to prove that its claim for policy benefits was "valid" and should have been paid because State Farm was "liable" on the claim—the Court renders section .058(b) completely meaningless.

## B.     Section .058 applies, and section .060 does not.

Section .060 does not apply here because State Farm fully complied with the Act's requirements. Section .060 only applies "if an insurer that is liable for a claim under an insurance policy is *not in compliance* with" the Act. TEX. INS. CODE § 542.060(a) (emphasis added). As the Court acknowledges, State Farm fully complied with the Act because it timely acknowledged,

15

investigated, and rejected Barbara Tech's claim and provided the reasons for its rejection. *Ante* at

___. If State Farm had timely *accepted* Barbara Tech's claim, in whole or in part, it would have

had to pay that amount within five business days. TEX. INS. CODE § 542.057(a). And had it then

failed to pay within five business days, it would have not been "in compliance with" the Act, and

section .060 would apply. But sections .055, .056, and .057 do not require an insurer that timely

acknowledges, investigates, and *rejects* a claim to pay anything by any particular deadline; they

merely require the insurer to explain its reasons for the rejection. *Id.* § 542.056(c). Because State

Farm timely acknowledged, investigated, and rejected Barbara Tech's claim, section .057's five-

day deadline is irrelevant, State Farm complied with the Act's requirements, and section .060 does

not apply.

Section .058, however, does apply here because, after rejecting Barbara Tech's claim, State

Farm "delayed payment of the claim" for more than sixty days after receiving from Barbara Tech

all the information it required to secure proof of loss. Under these circumstances, section .058

requires State Farm to pay statutory interest and attorney's fees unless "it is found as a result of

arbitration or litigation that [the claim] is *invalid* and should *not* be paid." *Id.* § 542.058(a), (b)

(emphases added). Because there's been no such finding in this case, section .058 requires State

Farm to pay the interest and fees.

## C.     Reading the sections "together," only section .058 governs the outcome.

Even if we could somehow read section .060 to apply when an insurer timely

acknowledges, investigates, and rejects a claim, the Act would still require State Farm to pay the

statutory interest and attorney's fees unless the insurer meets its burden to prove that the claim was

invalid and should not have been paid. Section .060 applies only if State Farm was "not in

16

compliance with" the Act. TEX. INS. CODE § 542.060(a). But as the Court agrees, State Farm fully complied with the Act by timely acknowledging, investigating, and rejecting the claim and providing its reasons for rejecting. If State Farm was "not in compliance with" the Act, its only possible act of non-compliance would be its failure to comply with section .058's sixty-day payment deadline. If State Farm's only non-compliance was with section .058, then that section must control whether State Farm owes interest and fees.[17] And as explained, section .058 requires State Farm to pay interest and fees unless an arbitration or litigation determines that the claim was *invalid and should not* have been paid.

**D.      State Farm conceded liability and validity by voluntarily and unconditionally paying the claim.**

Finally, regardless of whether section .058 applies (as I would hold) or section .060 applies (as the Court assumes but does not decide), and regardless of who bears the burden on that issue, we need not remand this case for further proceedings addressing that issue because State Farm conceded its liability and the claim's validity by voluntarily and unconditionally paying the

---

[17] To the extent we could read section .060 to create an ambiguity or inconsistency, section .058 "controls over" section .060 because it specifically addresses insurers that delay payment for more than sixty days, as opposed to insurers that more generally fail to comply with the Act. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 10 (Tex. 2018) ("[A] specific provision controls over a general provision . . . .").

claim.[18] Although Texas appellate courts have reached conflicting conclusions on this question,[19] the Act's language confirms that an insurer that voluntarily and unconditionally pays a claim "is liable" on that claim, even if its liability has not been adjudicated.

---

[18] Of course, a non-compliant insurer is not required to pay interest and fees if the claim for policy benefits is ultimately *adjudicated* to be invalid. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("There can be no liability [for statutory interest or attorney's fees] if there is no coverage under the policy."); *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) ("There can be no liability [for statutory interest or fees] if the insurance claim is not covered by the policy."); *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 290, 292 (Tex. 2001) (holding that insurer that failed to timely acknowledge claim did not owe attorney's fees under the Act because it paid personal-injury-protection benefits exceeding amount awarded for uninsured-motorist benefits and thus "was not liable for the claim under the terms of the insurance policy"); *Triyar Companies, LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 529 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding insurer was not obligated to pay statutory interest and fees because it had paid more than amount jury found was owed under the policy, and thus insurer was not liable under the policy); *see also Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (holding that insurer did not owe statutory interest because "the district court properly granted summary judgment" for the insurer on each of the claims under the policy); *Higginbotham*, 103 F.3d at 461 ("[T]here may be no liability for statutory damages if it is subsequently determined, by litigation, that the claim in question is invalid and not payable.").

And conversely, a non-compliant insurer must pay interest and fees if it is *adjudicated* to be "liable" for the policy benefits claimed. *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427–28 (Tex. 2004) (holding insurer found liable for amount of claim that exceeded amount insurer paid was obligated to pay statutory interest on the difference); *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 474 (Tex. App.—Dallas 2005, no pet.) (holding insurer found liable on claim for benefits was obligated to pay statutory interest and fees); *Dunn v. S. Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 471 (Tex. App.—Tyler 1999, pet. denied) (holding insurer that failed to timely acknowledge or pay claim and was ultimately found liable for the claim was liable for statutory interest and fees); *Oram v. State Farm Lloyds*, 977 S.W.2d 163, 167 (Tex. App.—Austin 1998, no pet.) (holding insurer that was found liable for claim was obligated to pay statutory interest and fees); *Marineau*, 898 S.W.2d at 404 (same); *First Nat. Life Ins. Co. v. Vititow*, 323 S.W.2d 313, 316 (Tex. Civ. App.—Texarkana 1959, writ dism'd) (holding statutory interest "is collectible if the insurer is finally adjudged to be liable on the policy regardless of how justifiable its unsuccessful defense of non-liability may have appeared") (citing *Lumbermens Mut. Cas. Co. v. Klotz*, 251 F.2d 499, 509 (5th Cir. 1958)); *see also Higginbotham*, 103 F.3d at 461 (holding insurer found liable for wrongfully rejecting claim for benefits was liable for statutory damages).

The issue here, however, is whether the Act requires a non-compliant insurer to pay interest and fees when it voluntarily and unconditionally pays the claim without its liability having been adjudicated at all.

[19] *Compare DeLaGarza v. State Farm Mut. Auto. Ins. Co.*, 175 S.W.3d 29, 33 (Tex. App.—Dallas 2005), *opinion supplemented on denial of reh'g*, 181 S.W.3d 755 (Tex. App.—Dallas 2005, pet. denied) (holding insurer that voluntarily paid claim in full after suit was filed was not liable for statutory interest or fees), *with Cater*, 27 S.W.3d at 84 (holding insurer that voluntarily paid claim in full after suit was filed was liable for statutory interest and fees), *and Nw. Nat'l Cty. Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 720 (Tex. App.—San Antonio 2000, pet. denied) (holding insurer that settled claim after suit was filed was liable for statutory interest and fees); *see also Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 983 (5th Cir. 2015) (distinguishing *Cater* and holding that insurer that settled claim was not "liable" on the claim because settlement agreement "did not contain an admission of liability under the Policy").

18

First, of course, section .060 does not say that the insurer must be "found," "declared," "adjudicated," or "held" liable for policy benefits; it says the insurer must pay interest and fees if it "is liable for the claim under the policy." *Id.* § 542.060(a). As we recently acknowledged, the term liable "broadly" includes "any kind of debt, obligation, or responsibility." *Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019) (citing *Liability*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "liability" as the "quality, state, or condition of being legally obligated or accountable"); *Liability*, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2014) (defining "liability" as "an obligation, responsibility or debt")). And typically, an insurer's obligation or responsibility to pay a claim—that is, its *liability*—arises when the covered loss occurs, well before any tribunal *announces* liability. *See Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 58 (Tex. App.—San Antonio 2002, pet. denied) (explaining that, outside of the uninsured-motorist context, an insurer's liability arises "at the time of the covered event").[20] Because section .058 requires an adjudication that the claim is invalid but section .060 does not

---

[20] For certain types of insurance coverage, the insurer's liability will not arise until some subsequent event occurs. *See, e.g.*, *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 n.41 (Tex. 2008) (noting insurer's duty to indemnify insured's liability to third party is not "triggered" until "a plaintiff ultimately prevails on a claim covered by the policy"); *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 587 (Tex. 1969) (explaining that excess-coverage insurer's "liability" does "not arise until the limits of the collectible insurance under the primary policy have been exceeded") (quoting 8 Appleman, INSURANCE LAW & PRACTICE, § 4914 (2d ed. 1962)); *Wellisch*, 75 S.W.3d at 58 (noting that uninsured-motorist insurer's liability does not arise until uninsured motorist's liability to insured is determined); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) (same). But a primary insurer's first-party liability to cover its insured's loss arises when the loss occurs, or at least when the insured submits valid proof of that covered loss. *Wellisch*, 75 S.W.3d at 58; *see Don's Bldg. Supply*, 267 S.W.3d at 31 (holding duty to defend is "triggered" when "plaintiff alleges facts that would give rise to any claim against the insured that is covered by the policy"); *Clements v. Minn. Life Ins. Co.*, 176 S.W.3d 258, 262 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding life insurer was liable "upon receipt of proof of Terry's death"); 19 *Couch on Insurance* 2d, § 82:121, at 864 (Rev. ed. 1983) (explaining that insured's rights under insurance policy "vest upon a loss").

require an adjudication that the insurer "is liable," we should presume that the provisions carry different meanings and not write requirements into a provision from which they are omitted.[21]

But more important, construing "is liable" to require a legal finding or adjudication of liability renders other of the Act's provisions meaningless. Section .060, for example, which requires a non-compliant insurer who "is liable" to pay the insured's attorney's fees, provides, "*If a suit is filed*, the attorney's fees shall be taxed as part of the costs in the case." TEX. INS. CODE § 542.060(b) (emphasis added). If an insurer is only "liable" when an arbiter or court adjudicates it so, a suit must always be filed, and subsection (b) would be superfluous. By specifically addressing how fees must be taxed *if* a suit is filed, the statute recognizes that the insurer may owe fees even if a suit is *never* filed, such as when the insurer voluntarily pays the policy benefits.

Likewise, subsection .058(b) provides that a late-paying insurer must pay interest and fees unless arbitration or litigation determines that the claim is invalid and need not be paid. *Id.* § 542.058(b). If an insurer that fails to pay within sixty days under section .058 must pay interest and fees only if it is adjudicated to be liable for the policy benefits, then subsection .058(b) is meaningless because the insurer is not obligated to pay interest and fees even if it is *not* found through arbitration or litigation that the claim is invalid and need not be paid. All that matters then is whether the insurer is legally adjudicated to be liable, so whether it is found to be *not* liable is irrelevant and subsection .058(b) is completely meaningless.[22]

---

[21] *Cf. Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017) ("We presume the Legislature 'chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.'") (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

[22] Construing the Act to require an adjudication of liability would also render subsection .058(c) meaningless. Subsection .058(c) requires a life insurer to either pay a "bona fide" claim or "properly file an interpleader action and tender the benefits into the registry of the court not later than the 90th day after the date the insurer receives all items,

20

The Court agrees that the Act requires a late-paying or non-compliant insurer to pay interest and fees even if it is not adjudicated to be liable, but only if the insurer "accepts liability" under the policy. *Ante* at ___. And the Court also agrees that an insurer "accepts liability" if it (1) initially "come[s] to a determination to accept and pay the claim or some part of it," *ante* at ___, (2) "specifically accepts the claim," *ante* at ___ n.14, (3) "accepts liability under the policy," *ante* at ___, or (4) after initially rejecting the claim, "later accepts the claim, thereby admitting liability," *ante* at ___. But it then concludes that an insurer that initially rejects the claim and then voluntarily and unconditionally pays it based on the appraisal amount does not "establish liability" under the Act and thus is not liable on the claim. *See ante* at ___ n.14 ("We find no support for the proposition that payment of an appraisal amount on a rejected claim establishes liability for purposes of section 542.060.").

With regard to an insurer's liability on a claim or the claim's validity, I can't see any difference between (1) an insurer who initially accepts and pays the claim, (2) an insurer who initially rejects but later voluntarily and unconditionally pays a claim, and (3) an insurer who initially rejects but later voluntarily and unconditionally pays the claim in an amount determined through an appraisal process. The Court holds that the insurer concedes its liability and the claim's validity in the first two scenarios but not in the third, yet it never explains any relevant difference

---

statements, and forms reasonably requested and required under Section 542.055." TEX. INS. CODE § 542.058(c). It then provides that a "life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds for more than 90 days shall pay damages and other items as provided by Section 542.060 until the claim is paid or an interpleader is properly filed." *Id.* But if "damages and other items as provided by Section 542.060" were never due unless the life insurer is ultimately adjudicated to be liable under the policy, it could not be liable for those damages before "an interpleader is properly filed." *Id.*; *see State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 805–06 (Tex. 2007) (holding that life insurer's "interpleader did not render the statute inapplicable" because the "interpleader suffice[s] in place of payment," so insurer that delayed filing interpleader until twelve days after sixty-day deadline was liable for statutory interest and fees up to the date it filed the interpleader, but not thereafter).

21

between the three. Regardless of whether an insurer initially accepts and pays the claim or initially rejects it and then later accepts and pays it, in each case, by voluntarily and unconditionally paying the claim, the insurer "accepts" the claim and thus concedes its liability for the benefits under the policy. That the amount the insurer voluntarily pays is determined through an agreed appraisal process rather than through an independent investigation, negotiations, or mediation is irrelevant to the question of whether the insurer is liable on the claim. As the Court emphasizes, the appraisal process has no effect whatsoever on the insurer's liability or the claim's validity. *Ante* at ___ n.14.

Here, as the Court agrees, State Farm "never denied that Barbara Tech's loss was covered," *ante* at ___, and instead has only ever disputed the amount of the covered loss. The appraisal determined the amount of the loss, but it did not determine State Farm's liability. After receiving the appraisal, State Farm could have continued to reject the claim. Instead, it voluntarily and unconditionally paid the claim. State Farm cannot now argue that the claim it has voluntarily and unconditionally paid should not have been paid at all.[23]

In summary, State Farm timely acknowledged, investigated, and rejected Barbara Tech's claim just as the Act required. Unsatisfied with State Farm's decision, Barbara Tech filed suit, forcing State Farm to either voluntarily pay the claim or litigate its liability and the claim's validity.

---

[23] The Court suggests that State Farm's payment of the appraisal amount was "similar to a settlement," *ante* at ___, and the CHIEF JUSTICE suggests State Farm "settle[d]" the claim without admitting liability, *post* at ___ n.30 (HECHT, C.J., dissenting). The record, however, does not support those suggestions. The parties did not "settle" anything; State Farm simply voluntarily and unconditionally paid Barbara Tech's claim for policy benefits. Of course, State Farm could have paid or tendered the appraisal amount conditioned upon an agreement that it was *not* conceding its liability, in which case Barbara Tech would have had to decide whether to accept that payment and forgo any right to pursue interest and fees or reject the conditional payment and insist on both. *See generally Hurst*, 523 S.W.3d at 842–46 (addressing insurer's tender of appraisal amount that was voluntary but was conditioned on insured's release of extra-contractual claims). Nothing in the Act prevents the parties from settling a claim in a manner that negates the insurer's liability under the policy or for interest and fees under the Act. But in the absence of such an agreement, the insurer's voluntary and unconditional payment of the benefits necessarily concedes its liability under the policy, regardless of whether it makes that payment after initially accepting or rejecting the claim, and regardless of whether the amount it pays is based on an appraisal.

State Farm chose to voluntarily and unconditionally pay the claim but did so more than sixty days after receiving from Barbara Tech all the information it reasonably required to initially reject the claim. Because State Farm fully complied with the Act's requirements, section .060 and its "is liable" standard does not apply. Instead, section .058 applies, and because arbitration or litigation has never determined that Barbara Tech's claim was invalid and should not have been paid, section .058 requires State Farm to pay statutory interest and attorney's fees. And even if section .060 could also somehow apply, it requires State Farm to pay interest and fees because State Farm conceded that it "is liable" under the policy by voluntarily and unconditionally paying the claim.

## V.
## Conclusion

I concur in the Court's judgment reversing the court of appeals' judgment and remanding the case to the trial court, but I would remand solely for a determination of the amount of interest and fees State Farm owes Barbara Tech. I therefore concur in part and dissent in part.

 

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 28, 2019

23